UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

BRIDGEPORT MUSIC, INC., et al., )
                                )
        Plaintiffs,              )
                                )
        v.                       )    NO. 3:01-0763
                                )    Judge Campbell/Brown
UNIVERSAL-MCA MUSIC PUB., INC., )    **Jury Demand**
et al.,                         )
                                )
        Defendants.              )

**TO: The Honorable Todd J. Campbell**

## REPORT AND RECOMMENDATION

**I.  INTRODUCTION**

Presently pending before the Magistrate Judge for a Report and Recommendation is the defendant, Universal Studio's motion for summary judgment (Docket Entry No. 108). This matter has been thoroughly briefed by the parties (Docket Entry Nos. 109, 110, 111, 112, 113, 115, 117, 118, 119, 120, 121, 130, 131, and 132). The matter was referred to the undersigned for a Report and Recommendation by the District Judge (Docket Entry No. 127).

For the reasons stated below, the Magistrate Judge **recommends** that this motion be **granted** and that all claims against Universal-MCA Music Publishing, Inc. be **dismissed**.[1]

---

[1] The only other remaining defendant is T-Funk Music and the plaintiffs have been given until March 1, 2006, to show why T-Funk Music should not be dismissed for failure to obtain service of process (Docket Entry No. 135).

## II. BACKGROUND

As all concerned are well aware, this case grew out of the initial litigation filed by the plaintiff, Bridgeport and others, in May 2001, under Case No. 3:01-0412. This case was opened up under its present number on August 1, 2001, upon severance of the original case into some 477 separate cases.

Discovery in the original case, as well as this case, continued fairly aggressively until all proceedings in this case were stayed on February 11, 2002, by Judge Higgins until the outcome of the first 10 related cases was determined.

On December 3, 2004, Judge Higgins lifted the stay for the limited and sole purpose of permitting parties to take all depositions for the purpose of factual discovery. These depositions were allowed to be taken between February 1, 2005 and June 10, 2005 (Docket Entry No. 102).

Subsequently, on May 11, 2005 (Docket Entry No. 105), Judge Higgins lifted the stay in order to permit the present motion for summary judgment to be filed.

At the present time, the case has been reassigned to Chief Judge Campbell and is set for trial on October 10, 2006 (Docket Entry No. 134). The case is under a scheduling order in order to have it ready for that trial date (Docket Entry No. 136).

It appears that the original composition in this case is entitled "Pumpin' It Up." It appears that "Pumpin' It Up" was written and recorded by a group going under the name "P-Funk

2

Allstars" and was originally released to the public in 1983 on the album "Urban Dance Floor Guerillas" and re-released in 1995 under the title "Hydraulic Funk." Bridgeport claims to own 100% of the musical composition "Pumpin' It Up." Originally, the case involved claims by plaintiff Westbound Records, which involved Westbound Records alleged 100% ownership of the copyright in the sound recording "Pumpin' It Up." It appears, however, that the sound recording to "Pumpin' It Up" is not involved, inasmuch as the evidence now shows that the alleged infringing work "Change Gone Come" only contains a "vocal interpolation" of musical elements from the composition "Pumpin' It Up." Westbound has been dismissed from this litigation (Docket Entry No. 128).

The actual infringement in this case is the allegation that the defendants interpolated plaintiffs' unique and highly distinctive original vocals, "I Feel Like Pumpin' It Up, Feel Like Pumpin' It Up" with defendant's vocal "I Feel Like Givin' It Up, Real Like Livin' It Up" (Docket Entry No. 112, Exhibit 4, Response to Interrogatory No. 1 at page 19).

Since at this point no party has raised the issue of whether these sounds are sufficiently similar to constitute infringement, the Magistrate Judge will assume, for the purpose of this Report and Recommendation, that they are, however, should this case proceed on to trial, that will obviously be a point of serious contention.

It appears that in May 1999, a third party record

3

company, Soul Train, released an album entitled "Well Connected," which contained a recording of the musical composition entitled "Change Gonna Come." In October 2000, another record company, D-3 Records, released an album entitled "Dead Man Walkin," which also contained a recording of the musical composition "Change Gonna Come."[2]

The heart of this litigation and the motion for summary judgment involves Universal's involvement with "Change Gonna Come." The plaintiffs contend that on August 28, 1966, L.T. Hutton, d/b/a T-Funk Music (T-Funk) entered into an exclusive writing and co-publishing agreement with Universal's BMI affiliated publisher, Songs of Universal, Inc. (SOU) for all of T-Funk's catalog and all other musical compositions that would become part of T-Funk's publishing catalog (Docket Entry No. 111, Declaration of Edward Arrow, Exhibit 1, ¶ 22). Among the rights granted to SOU in 1996 by T-Funk were the exclusive rights to license the use of a composition to administer and grant rights in and to the composition and copyrights therein, and to publish and sell sheet music and/or folios of the compositions and to collect all monies payable with respect to the composition and to otherwise administer the composition and copyrights therein and to act as the publisher

---

[2]These facts are taken primarily from the defendant's motion. The plaintiffs' response does not appear to attack this factual summary, although they provide additional information as will be cited later.

4

thereof.

Plaintiffs contend that "Change Gone Come" written in either 1999 or 2000 was among the songs co-written by L.T. Hutton and thus became part of T-Funk catalog, which was co-published and administered by SOU under this 1996 agreement. Accordingly, plaintiffs contend that SOU administered 100% of T-Funk's half interest in the infringing composition. Thus, plaintiffs contend that Universal's BMI affiliate publisher, SOU administered and controlled 50% of "Change Gonna Come." The defendants, on the other hand, contend that their former affiliate, SOU did not acquire any interest in the composition "Well Connected" which contained "Change Gone Come" until 8 months after its release. They argue that SOU entered into an exclusive song writing and co-publishing agreement with Hutton, d/b/a T-Funk Music, as of January 31, 2000 (Docket Entry No. 111, Attachment 1).

The defendants point out that SOU was not named as a defendant in this action.[3]

---

[3] The Court's analysis of the factual basis would have been greatly enhanced had both parties made better use of their statements of material facts not in dispute. The two docket entries containing responses to these statements (Docket Entry Nos. 120 and 130) are not particularly helpful. Both sides make so many objections to the statements that it is virtually impossible, in many cases, to determine what the parties contend is disputed, undisputed, or undisputed for the purpose of summary judgment. The Court's Local Rules provide three basic responses. The parties would have done well to have followed that advice. Objections are not a proper response, and neither is disputed but not material. As an example of the problems this caused, see Docket Entry No. 120, undisputed statement of facts No. 5, is in or about October 2000, third party record company D-3 Records, released an album entitled "Dead Man Walking," which also contained a recording by Snoopy Dog of the musical composition "Change Gonna Come." The response, consisting of some 9 lines could have simply been answered undisputed for the purpose of this motion. Instead, the Court has to wade through objections and qualifying

5

Regardless of when SOU or Universal Studios (collectively Universal) acquired rights to administer "Change Gonna Come," they emphatically deny that they issued any license authorizing any person or entity to use the musical composition "Change Gone Come" in the album "Well Connected." Their support for this statement is the affidavit of Mr. Edward, Vice President of Copyright of Universal Music Publishing Group (Docket Entry No. 111, ¶ 8). This affidavit in refreshingly clear language states

> I have reviewed Universal's files for licenses issues in connection with "Change Gonna Come." Universal never has issued any license authorizing the use of "Change Gone Come" on the albums "Well Connected" or "Dead Man Walkin."

Paragraph 9 states Universal never has publicly performed "Change Gone Come" and does not control the public performances of "Change Gone Come."

Both parties spent an inordinate amount of time arguing about the name of the various companies under the Universal umbrella and whether or not such names are material. The

---

to arrive at this rather simple conclusion

The defendants are equally guilty. See Docket Entry No. 130, statement 12, which is defendant has collected mechanical royalties from the exploitation of the composition "Change Gonna Come." The response is disputed but not material within a full page explanation with case citations and legal argument. Once again, the Court has to attempt to wade through the legal argument to determine that the answer is that they have received mechanical royalties in connection with "Change Gone Come" only by entities outside the United States. Response to statement of undisputed facts are not the place for legal argument.

If the parties continue to bury answers in page after page of verbiage, they run the risk that the Court will miss a pearl of fact in a sea of broken oyster shells

6

Magistrate Judge must admit that attempting to follow the various names, companies, entities, and individuals in connection with the music business is like trying to follow a rabbit through a briar patch.

For the purpose of this Report and Recommendation, the Magistrate Judge has not devoted any significant time to attempting to straighten out the names the defendants used or are alleged to have used because in the end it is not believed that the plaintiff has been able to show that the defendant, or any of the names it may have operated under, has committed an act of copyright infringement.

The plaintiffs, in their response (Docket Entry No. 115, pp. 10-11), complained that the motion for summary judgment exceeds the scope of the District Judge's authorization for them to file a motion for summary judgment. The Magistrate Judge will not consider this objection, since after the motion was filed the District Judge referred it to the undersigned for a Report and Recommendation. Had the District Judge not wished the matter considered, he would not have referred it to the undersigned.

### III. LEGAL DISCUSSION

The Magistrate Judge has applied the usual summary judgment standards, as set forth by the Supreme Court in <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). <u>United States v. International Fidelity Insurance Co.</u>, 200 F.3d 456, 459 (6th Cir. 2000). "The moving party need not support its motion with evidence

7

disproving the non-moving party's claims but need only show [that is point] out to the District Court-that there is an absence of evidence to support the non-moving party's case." Metro Communication Co. v. Ameritech Mobile Communication, Inc., 984 F.2d 739, 741 (6th Cir. 1993).

In this case, the Magistrate Judge believes that the plaintiffs have failed to show support for its claims by evidence. The plaintiffs strenuously argue that there must have been some type of license for the various alleged infringing works to have been published. However, the plaintiffs fail to support this allegation with evidence.

For example, in their brief in opposition to summary judgment (Docket Entry No. 115, p. 14), they state that Universal, in its evidence, only show that a review of its file found no evidence of a <u>written</u> license but does not state that no oral license was granted, citing Mr. Arrow's declaration (Docket Entry No. 111, ¶ 8). Unfortunately for their argument, ¶ 8 states in full "I have reviewed Universal's files for licenses issues in connection with "Change Gonna Come." Universal has never issued any license authorizing the use of "Change Gone Come" on the albums "Well Connected" or "Dead Man Walkin." This is a clear statement that Universal has never authorized **any** license. The Magistrate Judge does not know how much clearer a statement can be when they state they have never issued any license. There is no indication whatever that this statement was intended to be limited to written

8

licenses.

Stripped of many pages of verbiage, the plaintiffs contention simply is there since the two alleged infringing songs were produced, and Universal, either before or after their publication, had the right to administer the catalogs, Universal must have authorized the inclusion of plaintiffs' work in these records.

Unfortunately, plaintiffs have adduced no evidence that this in fact happened. Universal has flatly denied that it issued any licenses.

The Sixth Circuit, in a similar case of Bridgeport Music, Inc. v. Rhyme Syndicate Music, 376 F.3d 615 (6th Cir. 2004), pointed out that the District Court should not assume a license has been granted but that the record must show the actual granting of some type of license within the statute of limitations. Rhyme at 621-622.

As the Sixth Circuit noted, where the defendant flatly denies the granting of a license, it is up to the plaintiff to come forward with some proof that they, in fact, did grant such a license. The individual providing the affidavit in the Rhyme case was the same Edward Arrow, Vice President of Copyright, that has provided an affidavit in this matter, also flatly denying the granting of a license. Rhyme at 622-23.

The Magistrate Judge would also note that none of the

9

other defendants, or any other party in this case, has at any time claimed that the Universal defendants issued them a license for the use of plaintiffs' work.

The plaintiffs claim the fact that the defendant Universal may have received some royalties within the period of limitations is sufficient. With all due respect to this argument, it has been rejected by the District Judge in related cases involving Bridgeport. In particular, <u>Bridgeport Music, Inc., et al. v. Warner Brother WB Music Corp., et al.</u>, Case No. 3:01-0706. There in a Report and Recommendation (Docket Entry No. 267), subsequently adopted by the District Judge, the Court held at page 11 that the receipt of income alone from the sale of an infringing article does not amount to contributory infringement.

This issue concerning the receipt of royalties was discussed in the <u>Rhyme</u> case at page 622. However, the Court in <u>Rhyme</u> did not reach the question of whether a publisher may be found liable for infringing sales occurring within the limitation period when its only actions were the granting of a license outside the period and the receipt of royalty payments under that license within the limitation period. Thus, the ruling of the District Judge in Case No. 3:01-0706 remains and the Magistrate Judge finds no reason to change that ruling in this case.

The royalties received by Universal appear to have been de minimis. There appears no royalties were received at all until after 2002 and the amounts were just over $1.00, or that any money

10

was received from any of the record companies that manufacture, distribute, or exploited "Well Connected" or "Dead Man Walkin" was received in the United States (Docket Entry No. 118, Exhibit O, pp. 85-91). See also plaintiffs' reply memorandum (Docket Entry No. 132, pp. 7-8).

In summary, after reviewing the voluminous pleadings in this matter, the Magistrate Judge is simply unable to find that the plaintiffs have produced sufficient evidence of infringement to go forward. While they have suspicion and speculation, that does not constitute evidence that would allow this case to go forward. Accordingly, the defendant Universal is entitled to summary judgment in this matter.

## IV. RECOMMENDATION

For the reasons stated above, the Magistrate Judge **recommends** that this motion (Docket Entry No. 108) be **granted** and the case be **dismissed** as to this defendant.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to this Recommendation, with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in this Report in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. An, 474

U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111 (1986).

    **ENTERED** this 24th day of February, 2006.

                        /s/ Joe B. Brown
                        JOE B. BROWN
                        United States Magistrate Judge